## TERRITORY OF NEW MEXICO, Appellee, v. FIRST NATIONAL BANK OF ALBUQUERQUE, Appellant.

### SYLLABUS BY THE COURT.

1. BOARD OF EQUALIZATION—VALUATION ON CAPITAL STOCK OF BANKS —UNIFORMITY.—The Territorial board of equalization has power to equalize the valuation fixed upon the capital stock of banks, in the return or by the assessor or county boards of equalization where an examination of the tax rolls of counties shows that the valuation was not fixed with reasonable uniformity, and to equalize the same, so as to secure reasonable uniformity in the valuation and assessment of that class of property, without affecting other classes of property assessed with reasonable uniformity, and it is immaterial whether appeal has been taken by the taxpayer or not.

2. MEETING OF THE BOARD—NOTICE.—The date fixed for the meeting of the territorial board of equalization gives notice to the taxpayer to be present and defend his interest liable to be affected in the equalization of taxes throughout the territory, and no other notice is provided for. ·

*Appeal,* from the District Court of Bernalillo County, Second Judicial District.   Affirmed.

Statement of the case by the court.

In this action the plaintiff sought to recover of the defendant taxes to the amount of $5,069.16, the defendant admitting a large portion of this amount to be correct, paid the same into court and contested only a portion of the amount.   Judgment was rendered upon the trial against the defendant for the sum of $317.63 and costs, and the defendant brought the case to this court by appeal.

A stipulation entered into by the counsel on both sides of the case, states all the facts necessary to be referred to for the determination of this appeal.   From this stipulation it appears that on the thirtieth day of April, 1897, the defendant bank

made a return of its capital stock at the sum of $75,000.00, together with a considerable amount of real property which was claimed to be embraced within the capital stock and not subject to taxation otherwise. The return made by the defendant was accepted by the assessor, was approved by the board of county commissioners sitting as a board of equalization on the tenth day of June, A. D. 1897, and taxes assessed upon the valuation stated in the return. From the action of the board of county commissioners sitting as a board of equalization no appeal was taken to the territorial board of equalization. A copy of the tax roll was duly transmitted to the territorial auditor as required by law. The territorial board of equalization met as such in the city of Santa Fe on the twenty-first day of September, A. D. 1897. It appears from the stipulation that the First National Bank of Las Vegas, New Mexico, and the First National Bank of Raton, New Mexico, and the Taos County Bank of Taos, New Mexico, had each appealed from the action of the county commissioners sitting as a board of equalization in their respective counties to the territorial board of equalization, and in deciding each of these appeals the territorial board of equalization made the following order as to each:

"It is ordered that the valuation of the capital stock and the surplus of said bank be and the same hereby is fixed at sixty per centum of the capital stock of said bank, less the value of any real estate or other property in which the capital or surplus of said bank is invested on which taxes are separately assessed and paid in this Territory."

The board at the same time took the following action, as appears from the stipulation:

"In the matter of the assessment of the First National Bank of Albuquerque, New Mexico; the Sierra County Bank; the Silver City National Bank; the Bank of Commerce of Albuquerque; the Bank of Deming, New Mexico; the Bank of George D. Bowman & Sons, Las Cruces, Dona Anna county, New Mexico; the Bank of Frank G. Bartlett, Magdalena, Socorro county, New Mexico; the Bank of Roswell, Chaves county, New Mexico; the Bank of W. H. Byerts, Socorro county, New Mexico; the Bank of Andrew Morton & Company,

Springer, Colfax county, New Mexico; the Bank of Mills, Seaberg & Company, Springer, Colfax county, New Mexico; the Exchange Bank, White Oaks, Lincoln county, New Mexico; Brown & Manzanares of Socorro, Socorro county, New Mexico; and other banks not herein mentioned; it appearing to the board from the assessment rolls furnished to it by the auditor, from the counties of Bernalillo, Santa Fe, Sierra, Grant, Dona Ana, Socorro, Chaves, Colfax and Lincoln that the scale of valuation of shares in the capital stock and surplus of banks in said counties has not been made with reasonable uniformity by the different county assessors of said counties. Now, therefore, the said board, in order to adjust and equalize the said assessment rolls in said counties on shares of capital stock and surplus of banks, hereby raises the said assessment on said shares of the capital stock of said banks to the uniform amount of sixty per centum of the par value of said shares of the capital stock and surplus of each of said banks so that the same will be a uniform value throughout the Territory."

It appears from the stipulation that subsequent to said action of the territorial board of equalization the assessor of Bernalillo county, in pursuance of the action of the territorial board, made an additional assessment on the capital stock of the bank, equaling ten per centum upon the par value of the stock, which appears to have been as is alleged in the declaration, $15,000.00, and made an additional assessment, thereby making an assessment upon $90,000.00 of the capital stock of sixty per centum of the capital stock of the bank, as fixed by the territorial board of equalization.

It appears further that the assessor at the same time made an additional assessment upon a large amount of other property upon the ground that it had not been previously assessed, the total amount of additional assessment, including the $15,-000.00 capital stock, amounted to $44,825.00. It further appears that the bank was not notified of the action of the territorial board of equalization, nor of the action of the assessor, or of the board of county commissioners until the twenty-fourth day of February, A. D. 1898, when the collector gave the defendant notice by mail. It further appears that on the fifth day of February, 1897, the defendant bank offered to pay

the amount of taxes due, based upon its return and the assessment in pursuance thereof, but the collector refused to accept the same, and it further appears that the defendant, by permission of the court, on the nineteenth day of March, 1898, paid into court the sum of $1,588.23 for the use of the plaintiff, to be applied and paid as the plaintiff might elect.

ALONZO B. MCMILLEN, for appellant.

It is the duty of the assessor between the first day of March and the first day of May in each year to ascertain the names of all taxable inhabitants, and all property in his county subject to taxation and exact from each person a statement, in writing, showing all property liable to taxation and its value, and require the same to be sworn to, etc. Sec. 4032 C. L. 1897.

If the assessor finds the list incorrect as to amount or value he can change same, but must notify the party interested of such change. Sec. 4039 C. L. 1897.

Any person dissatisfied with the action of the assessor may appeal to the board of county commissioners. Sec. 4047 C. L. 1897.

The county commissioners of each county shall constitute a board of equalization for the revision, correction and completion of the assessment rolls. In case any material change is made by the board the party interested is entitled to notice. From the action of this board any person interested may appeal *to* the territorial board of equalization by filing a written notice of appeal within five days from the date of the decision of the board. Sec. 4048 C. L. 1897.

Taxes levied according to the provisions of law are to have the force and effect of a judgment against the person assessed. Sec. 4057 C. L. 1897.

The action of the assessor and board of county commissioners in assessing property for taxation is of a judicial character and is final as to all matters within their jurisdiction, unless appealed from in the manner provided by law. 25 Am. & Eng. Ency. of Law, 236; Stanley v. Supervisors, 121 U. S. 535-550; sections 4048, 4057, C. L. 1897.

The powers of the territorial board of equalization are found in sections 2635 and 2636. Section 2635 gives the terri-

torial board of equalization original jurisdiction to assess railroad, telegraph, telephone and sleeping car companies, and forbids the fixing of a maximum or minimum rate of value to be fixed upon any class of property. For the purpose of making this assessment they are required to meet on the second Monday in January in each year.

Section 2636 requires said board to meet annually on the second Monday of September as a board of equalization and appeal only. Their duty as a board of equalization is prescribed therein as follows: "It shall be the duty of the auditor of the territory at such meeting to furnish said board with the assessment roll of each county of the territory for their inspection and examination for the purpose of ascertaining the rate of assessment and valuation of property therein, and whenever they are satisfied that the scale of valuation has not been made with reasonable uniformity by the different county assessors, the said board shall adjust and equalize the said assessment rolls by raising or lowering the valuation thereof so that the same shall be of uniform value throughout the Territory."

The section then proceeds to prescribe the duties of the board sitting to hear appeals, but as there was no appeal from the assessment as finally approved by the board of county commissioners that part of the section is not important.

Under the provision of the statute above quoted the territory must find, if at all, the power of the territorial board of equalization to raise or lower individual assessments. There is no express provision for such arbitrary power. On the contrary, where they find that the scale of valuation has not been made with reasonable uniformity by the different county assessors they shall adjust and equalize the said assessment rolls by raising or lowering the valuation thereof so that the same shall be of uniform value throughout the territory. It does not say that the board shall raise or lower individual assessments, but that they shall equalize the rolls of the different counties by raising or lowering the valuation thereof, that is of the rolls of the different counties. What is the object of this board? Clearly not to assess the property of individuals, but to see that each county pays its fair portion of the territorial taxes. This it can do and must do only by raising or lowering the total val-

uation of the several counties so as to make each bear its just portion of the expenses of the territory.

If it was the intention to give this board power to assess the property of individuals why were they not required to assess the property of all individuals so as to make the assessments uniform? Why was the office of assessor of the several counties created? Why was the assessor required to go personally to the taxpayers to require a list of their property? Why was an appeal allowed from the action of the assessor to the board of county commissioners? Why was notice required to be given of any change in the assessment either by the assessor or board of county commissioners? Why was an appeal allowed from the board of county commissioners to the territorial board of equalization if the latter had the power to act without appeal? If the territorial board of equalization has the power to arbitrarily change the valuation of the property of individuals without notice or opportunity to be heard (as was done in this case) what is the use of the provisions requiring notice to the taxpayer in case of change of valuation by the assessor or board of county commissioners? If the action of the board of county commissioners is not final although not appealed from what was the use of the provision limiting the right to appeal to five days from the date of their decision? If it was the intention of the Legislature to give the territorial board of equalization original jurisdiction to assess the property of individuals why was that right limited in section 2635 to railroad, telegraph, telephone and sleeping car companies? And why was no provision made for furnishing other evidence than the assessment rolls or for giving the taxpayer an opportunity to be heard?

The only logical answer is that it was never intended that the territorial board of equalization should raise individual assessments. The assessor in each county is supposed to investigate the amount and value of the property of the several taxpayers within his county. The board of county commissioners are to adjust and revise these assessments where deemed necessary, but never without notice to the taxpayer and an opportunity to be heard and their action is final unless appealed from within five days. The board of county commissioners adjust

and equalize the taxes between individuals in their respective counties and the territorial board of equalization adjusts and equalizes the taxes between the several counties of the territory. If the board of county commissioners have properly equalized the taxes between the individuals of their county, and we must presume that they have if no appeal is taken, then it would be unjust and illegal for the territorial board to make those taxes unequal by raising or lowering individual assessments. If the object of the territorial board of equalization be to secure equality between the several counties that may be done by raising or lowering the total valuations of such counties as much as may be necessary for that purpose. To raise or lower the total values as shown by the assessment rolls does not change the relative values of the assessed property of the individuals within the county as fixed by the board of county commissioners.

Being creatures of statute, boards of equalization can act only when specifically authorized. Hamilton v. State, 3 Ind. 452; Orr v. State Board of Equalization, 28 Pac. R. 416; People v. Raynolds, 28 Cal. 113; Case v. Dean, 16 Mich. 12; People v. Adams, 125 N. Y. 471; State v. New Linden Hotel Co., 9 Mo. App. 450-455; Com. v. Luzerne Co. (Pa.), 15 Atl. R. 548.

Boards of equalization may increase the aggregate valuation of one district and decrease that of another, but they can not, in the absence of statute, change individual assessments or the valuation placed upon particular classes of property. Orr v. State Board of Equal. (Idaho), 28 Pac. 416; People v. Lothop, 3 Col. 428-461; People v. Nichols, 49 Ill. 517; Getchell v. Polk Co., 52 Ia. 107; Challiss v. Rig, 49 Kan. 119; Boyce v. Sebring, 66 Mich. 210; Black v. McGonigle, 103 Mo. 192; State v. Roe, 36 N. J. L. 86; Kelley v. Corson, 11 Wis. 1; People v. Hadley, 76 N. Y. 337; Sate v. Hopper, 54 N. J. L. 544; Buck v. People, 78 Ill. 560; Fields v. Russell, 38 Kan. 720; State v. Allen, 43 Ill. 456; Tallmadge v. Rensselaer Co., 21 Barb. 611; San Francisco R. Co. v. State Board of Equalization, 60 Cal. 12; Wells v. State Board of Equal., 56 Cal. 194; Royce v. Jenney, 50 Ia. 676; Paul v. Pac. R. Co., 4 Dill. (U. S.) 35; Cummings v. Stark (Ind. 1893), 34 N. E. Rep. 444; McConkey v. Smith, 73 Ill. 313.

State boards are sometimes authorized to make original assessments on particular classes of property, such as that of railroads and other corporations, but their power is to be strictly construed and confined to the designated classes, everything else being required to be assessed by the local assessors. Chicago, etc. R. Co. v. Paddock, 75 Ill. 616; St. Louis, etc. R. Co. v. Williams, 53 Ark. 58; Louisville, etc., R. Co. v. Com. 85 Ky. 198; Red Willow Co. v. Chicago, etc., R. Co., 26 Neb. 660; Santa Clara Co. v. So. Pac. R. Co., 118 U. S. 394; Cal. v. Central Pac. R. Co., 127 U. S. 1; San Francisco v. Central Pac. R. Co., 63 Cal. 469; Atlantic, etc., R. Co. v. Yavapai Co. (Ariz. 1889), 21 Pac. 768.

T. A. FINICAL, G. W. JOHNSTON for appellee; E. L. BARTLETT, of counsel.

1.   Was it necessary that notice should have been given defendant that the territorial board of equalization contemplated raising the assessment on its stock, or that defendant should have been present when such raise was made, or that it should have afterwards notified that the raise had been made.

We think not.   The statute provides for no such notice. The board is a purely statutory creation; its powers are given it by statute, and they must be exercised according to the statute.   The statute empowers it to equalize by raising or lowering the scale of valuation, and provides for no notice to be given, except the notice that all have of the time and place of meeting of the board, which is provided for in the same statute vesting the board with its power. The Supreme Court of the United States, in affirming a decision of the Illinois Supreme Court in similar case under a similar statute, held that notice to defendant was not necessary, as follows:

"It is charged that the board of equalization increased the estimates of value so reported to the auditor without notice to the companies, and without sufficient evidence that it ought to be done.   *   *   *   It is hard to believe that such a proposition can be seriously made.   If the increased valuation of property by the board without notice is void as to the railroad companies, it must be equally void as to

every other owner of property in the state, when the value assessed upon it by the local assessor has been increased by the board of equalization. How much tax would thus be rendered void it is impossible to say. The main function of this board is to equalize these assessments over the whole state. If they find that a county has had its property assessed too high with reference to the general standard, they may reduce its valuation; if it has been fixed too low they raise it to the standard. When they raise it in any county, they necessarily raise it on the property of every individual who owns any in that county. Must each one of these have notice and a separate hearing. If a railroad company is entitled to such notice, surely every individual is equally entitled to it. Yet if this be so, the expense of giving notice, the delay of hearing each individual, would render the exercise of the main function of this board impossible. The very moment you come to apply to the individual the right claimed by the corporation in this case, its absurdity is apparent. Nor is there any hardship in the matter. This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong; and, in the business of assessing taxes, this is all that can reasonably be asked." State Railroad Tax Cases, 92 U. S. 575, p. 10.

"It seems to be supposed that it is essential to the validity of this tax that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed. But this is not, and never has been, considered necessary to the validity of a tax." McMillen v. Anderson, 95 U. S. 36, p. 42.

The same doctrine is reannounced and affirmed by the same court in the Kentucky Railroad Tax Cases, 115 U. S. 321, pp. 331-2.

2. Was it necessary for an appeal to have been taken, in order that the territorial board of equalization might act upon this matter, and did it have no right to act without such appeal being taken?

The statute does not require the board of equalization

to wait until an appeal to it is taken before it acts. It provides that the auditor of the territory shall furnish the board "with the assessment roll of each county for their inspection and examination, for the purpose of ascertaining the rate of assessment and valuation of property therein; and whenever they are satisfied that the scale of valuation has not been made with reasonable uniformity by the different county assessors, the said board shall adjust and equalize the said assessment rolls by raising or lowering the valuation thereof, so that the same shall be of uniform value throughout the territory."

The rolls are furnished the board that an inspection of the valuation of all property may be made, and the rate of taxation ascertained. If from that inspection the board are satisfied of any inequality in the assessment rolls it becomes its duty to adjust that inequality. It matters not whether the knowledge of the board is derived from personal information of some of its members, or from the testimony of witnesses produced, the inspection of the rolls, or from other sources, its duty is to adjust the matter according to the best information obtainable and the facts before it. And it is not for this court to determine how the conclusions of the board may have been reached. In a similar case the Supreme Court of the United States says:

"As we do not know on what evidence the board acted in regard to these railroads, or whether they did not act on knowledge which they possessed themselves, and as all valuation of property is more or less matter of opinion, we see no reason why the opinion of this court, or of the circuit court, should be better, or should be substituted for that of the board, whose opinion the law has declared to be the one to govern in the matter." State Railroad Tax Cases, 92 U. S. 575, pp. 609-10.

In the latter part of section 2 of the same statute quoted above, the board is given power to hear and determine appeals, but that in no way interferes with its duty to equalize the assessment rolls as provided above.

3.   Most of the statutes of the states providing for state boards of equalization also provide that such boards shall equalize valuations only between the different counties,

townships or taxing districts.  This will be found true of all the cases cited by appellant to show that our board cannot "change individual assessments or the valuation placed upon particular classes of property."  In this particular respect our statute is entirely unlike the others.  Ours provides that when "the scale of valuation has not been made with reasonable uniformity" the board shall equalize by "raising or lowering the valuation thereof."  It does not say shall raise or lower the valuation of all property in the county or in any district.  And from the reading of the whole statute it is easily seen that this was not the intention of the Legislature.  The Legislature sought to provide for assessing all classes of property at the same rate.  As for instance bank stock.  When some assessors listed it at 40 per cent., some at 45 per cent., some at 50 per cent., and some higher, and perhaps others lower, the board of equalization was clothed with the power to compel a uniform rate of taxation upon it, and as in the stipulation herein shown, when it fixed all such stock at 60 per cent. of the face value, the board of equalization carried out the intention of the Legislature.  The "scale of valuation" in our statute refers to the valuation placed upon any particular kind or class of property, not that which may be within any one particular county or township or taxing district, but that which is within the whole territory.  And the board, by assessing all bank stock at 60 per cent. of its face value, carried out that intention to the letter.  No one could say, if bank stock was assessed at 40 per cent. in one county and 50 per cent. in another, that the rule of uniformity could have been reached by either raising or lowering the valuation of all property of either of the counties 10 per cent.  By that means the bank stock would all have been placed upon an equal footing.  But what about all the other property?  The dissimilarity might be made greater, the burdens of taxation more unequally distributed by such a course, and it was to provide against this that the Legislature gave the board the power to fix the "scale of valuation."  By this means property of the same kind is assessed at the same rate throughout the whole territory.  This result could not be attained by making either horizontal in-

creases or decreases of the values as returned by the assessors.

The Supreme Court of Nebraska states the proposition as follows:

"The assessor of one precinct or township may value lands too high, and other classes of property too low, while the assessor of another precinct or township may value town or city lots too high, and another assessor may value personal property too high.   *   *   *   Inequality in the assessment of the different classes of property could not be corrected by adding to or deducting from the aggregate valuation of a precinct or township.   *   *   *   All the property in a township or precinct belonging to the same class must be increased and diminished alike.   *   *   *   The board can increase or reduce the value of one class in the precinct, and not disturb the others therein, if necessary to a just and proper equalization between the precincts or townships."   State ex rel. Lincoln Land Co. v. Edwards et al., 47 N. W. 1048.

The statutes of Oregon are general in terms, like ours, and the Supreme Court of that state decided that the board of equalization should regulate by making all classes of property bear an equal share of the taxes.

"To illustrate:   Mortgages might be assessed in a county at their full cash value, and the other kinds of real property at a nominal sum.   Any increase of the aggregate valuation would raise the assessed value of mortgages above their full cash value.

"To say that the act creating the state board of equalization is a piece of hasty and crude legislation is to say what is obvious; but laws of this character are remedial in their nature, intended to correct an evil by requiring each county to pay its just proportion of the burden of maintaining the state government, to suppress wrong, and to promote the public good, and should be liberally construed.   Endlich Int. St. 346.

"The state board of equalization concluded that when thirty per cent. had been added to the appraised value of city, village and town lots,   *   *   *   such property was then appraised at its full cash value, and that it was neces-

sary to add 100 per cent. to the appraised value of mortgages in order to equalize their appraisement with that of the
lots.   *   *   *   It would seem that this was a uniform and
equal rate of assessment and taxation, as near as could be
determined by the exercise of an honest discretion on the
part of the state board of equalization." Smith v. Kelly,
Sheriff, et al., 33 Pac. 642; see also State ex rel. Smith v.
Gaylord, 41 N. W. (Wis.) 517.

So far as counsel for appellee has been able to examine
the authorities cited by appellant in support of the contention that boards of equalization have the power only to increase the aggregate valuation of one district and decrease
that of another, we find these authorities are based on statutes that specifically limit the power of such boards to such
action.   The New Mexico statute is in the broadest, most
general terms.   Whenever the board finds the "scale of valuation has not been made with reasonable uniformity by
the different assessors, the said board shall adjust and equalize the said assessment rolls by raising or lowering the valuation thereof so that the same shall be of uniform value
throughout the Territory."   The position of appellant evidently is that the word "thereof" in the above quotation
of the state refers to the rolls only.   The object of the equalization is "that the same shall be of uniform value throughout the Territory."   Our contention is that the word "same"
refers to property, and, as pointed out above, it would be
impossible to make the value of different classes of property
uniform throughout the Territory by adding or subtracting
from the aggregate of the rolls in the different counties.
The assessor of one county may think that the "scale of
valuation" of bank property is, say, 40 cents on the dollar,
and another assessor 100 cents.   The same diverse views
may be entertained by other assessors as to other classes of
property.   In no other way can the scale of valuation of the
different classes of property be made uniform except in the
manner that the board adopted in this case.   We, of course,
contend that our statute is broad enough to include equalization by adding or subtracting from the rolls of the counties in the aggregate whenever there is an inequality in the
aggregate valuation of these counties.

Another fact must be borne in mind in considering the authorities cited by appellant, and that is the rule for the construction of revenue laws is different in the Federal and Territorial courts from the rule generally prevailing in the state courts. The general rule is that these statutes are to be construed strictly, as in derogation of the common law and the rights of the citizen. Whereas the rule laid down by the Supreme Court of the United States, and made binding on this court by statute, is that revenue laws are remedial in their nature, intended to promote the public good, and should be construed so as best to carry out these objects.

"Revenue statutes are not to be regarded as penal, and, therefore, to be construed strictly. They are remedial in their character, and to be construed liberally, to carry out the purposes of their enactment." United States v. Hodson, 10 Wall, 395, loc. cit. 406.

"Revenue laws are not penal laws in the sense that requires them to be construed with great strictness in favor of the defendant. They are to be regarded as remedial in their character, and intended to prevent fraud, suppress public wrong and promote the public good. They should be so construed as to carry out the intention of the Legislature in passing them and most effectually accomplish these objects." Cliquot's Champagne. 3 Wall., 114, loc. cit. 145.

To the same effect see Taylor v. U. S., 3 How. 197; U. S. v. Stowell, 133 U. S. 12; U. S. v. Allen, 38 Fed. 737.

McFIE, J.—The questions to be determined in this case are, first, whether the territorial board of equalization had power to require the $15,000.00 of capital stock to be added to the amount of $75,000.00 which the defendant had returned as the capital stock of the bank, there being no appeal taken from the board of county commissioners of Bernalillo county, and, second, if this could be done, had the defendant a right of notice of the action taken by the territorial board of equalization. From the voluminous statement of facts it will be seen that while no appeal was taken from the action of the board of county commissioners of Bernalillo county, sitting as a board of equalization, the territorial board of

equalization did take action which resulted in adding $15,000.00 to the capital stock to be assessed against the bank for the year 1897. It appears that three other banks, two of them national banks, the same as the defendant in this case, had appeals pending before the territorial board from the assessment of their capital stock, and upon determining these appeals the board, upon examination, found that the scale of valuation of shares of the capital stock and surplus of all of the banks of the territory had not been made with reasonable uniformity by the different county assessors, as required by law.   The said territorial board of equalization thereupon made two orders applicable not only to the three banks which had taken the appeal, but also to all the other banks in the Territory, fixing the amount for which they should be assessed at 60 per cent of the par value of their capital stock and required the assessment of the capital stock of all the banks of the Territory to be equalized, so that all of the banks should be assessed at the uniform rate of sixty per centum of their capital stock. This order, of course, included the defendant bank and the order was carried into effect by the assessor, and while it appears that $15,000.00 of the capital stock was added to the return as an additional assessment, it was in effect simply carrying out the requirement of the territorial board of equalization, was the act of that board, and counsel so recognized in their briefs. The return made by the bank fixed the valuation of the capital stock at $75,000.00, but it appears from the declaration, the additional assessment and the papers in the case, that the capital stock of this bank was really $150,000.00, and that adding the $15,000.00 of capital stock required by the territorial board to be added to the amount stated in the return of $75,000.00; the amount fixed by the board upon which the bank should be taxed, was $90,000.00, or sixty per centum of the par value of the capital stock of the bank. The power of the board to take this action is called in question and the provisions of the statute conferring its powers must determine this question.   For the purpose of this case it is only necessary to examine section 2636, C. L. 1897, as this is undoubtedly the section confer-

ring the power exercised by the board, if such power exists. Section 2635 is referred to by counsel for the plaintiff, but that section refers to the original jurisdiction of the board to assess railroad, telegraph, telephone and sleeping car companies, and is not in point in this case, as the making of an original assessment was not attempted. Section 2636 requires said board to meet annually on the second Monday of September as a board of equalization and appeal only. Their duty as a board of equalization is prescribed therein as follows:

"It shall be the duty of the auditor of the Territory at such meeting to furnish said board with the assessment roll of each county of the territory for their inspection and examination for the purpose of ascertaining the rate of assessment and valuation of property therein, and whenever they are satisfied that the scale of valuation has not been made with reasonable uniformity by the different county assessors the said board shall adjust and equalize the said assessment rolls by raising or lowering the valuation thereof, so that the same shall be of uniform value throughout the territory."

The first assignment of error is that "the court erred (V) in finding that the territorial board of equalization had original jurisdiction on its own motion to raise the assessment of said defendant."

The second assignment is wholly dependent on the determination of the first. The third assignment is as follows:

"Because said territorial board of equalization has no power or jurisdiction to raise the assessment of individuals except upon appeal."

Considering the third assignment first, counsel, in his brief on behalf of appellant, asks the question, did the territorial board of equalization have the power to raise the assessed valuation of appellant's property notwithstanding the action of the assessor and the board of county commissioners and without appeal from said action, and without notice or opportunity to be heard. The answer to this question disposes of the whole case. It is well to keep in mind at the outset, that the county board of equalization

and the territorial board of equalization have entirely different jurisdictions; one acts necessarily within the county which the board represents; the other is given extended jurisdiction embracing the entire Territory. The territorial board may consider and decide cases of appeal under the jurisdiction conferred upon it, but in addition to this the territorial board is given original and enlarged jurisdiction to determine such questions as affect assessments of property in the different counties, and also with regard to the effect of those assessments throughout the territory to secure uniformity. We see no reason why the territorial board should not exercise the power if conferred by the statute, regardless of whether an appeal was taken. from the action of the county board or not. The county board has power to equalize the assessment of property within the county, and the right of appeal is given to enable citizens of the county, to protect themselves and obtain their legal rights in cases of unjust discrimination or other irregularities in the assessments by the county assessor, and for the rehearing of such cases appellate jurisdiction is. given the territorial board; but the assessment of one county, while it may be uniform within that county upon certain kinds of property, may not be uniform when compared with the assessment of the same kind of property in other counties of the territory. The auditor is required by law to submit the tax rolls of the different counties to the territorial board, for examination, for the purpose of determining the question of reasonable uniformity in the valuations of property. Take for instance the capital stock of banks as one class of property borne upon the assessment rolls of the county of Bernalillo. While the capital stock of all the banks of Bernalillo county may be uniformly assessed, and when considered by the equalization board of the county of Bernalillo, the assessment is unobjectionable and uniform, when the assessment roll of Bernalillo county is compared with the assessment rolls of other counties, it may be that the valuation placed upon the capital stock of the banks of Bernalillo county is not at all uniform with the assessment of similar stock of banks in other counties. Could it be contended in that event, that

because there was no appeal from the action of the board of equalization of Bernalillo county, the territorial board of equalization was powerless to make the assessment of bank stock in Bernalillo county and other counties uniform by either adding to or taking from the valuation fixed by the assessors of the different counties which was necessary to secure uniformity in the assessment of such stock? Under section 2636 above cited, we think not. The county board of equalization certainly cannot deprive the territorial board of any jurisdiction that may be conferred upon it by the statute. The county board of equalization acts with a view of uniformity within the county without any regard to the assessments, even of the same kind of property in other counties of the territory, and the want of uniformity in the assessment of the different classes of property returned by county assessors can never be known, until the assessment rolls of the different counties are compared by the territorial board of equalization. If, because no appeal is taken from the action of the county board of equalization, the territorial board of equalization is powerless to either increase or decrease valuations made by the assessor, approved by the county board of equalization, then the territorial board of equalization would be powerless to secure the reasonable uniformity required by the statute. Section 2636 expressly says:

"It shall be the duty of the auditor of the Territory at such meeting to furnish said board with the assessment rolls of each county of the Territory for their inspection and examination for the purpose of ascertaining the rate of assessment and valuation of property therein, and whenever they are satisfied that the scale of valuation has not been made with reasonable uniformity by the different county assessors, the said board shall adjust and equalize the said assessment rolls by raising or lowering the valuation thereof so that the same shall be of uniform value throughout the Territory."

This section of the statute, in our opinion, confers jurisdiction upon this territorial board, to so adjust and equalize

the assessment rolls by raising or lowering
BOARD of equalization: valuation on capital stock of banks: uniformity.
the valuation of certain classes of property, as may be necessary to secure uniformity throughout the Territory. Counsel for the appellant attaches much importance to the words "assessment rolls," used in this section of the statute, and contends that all the territorial board has power to do, is to increase or diminish the total assessment of the respective counties; that is to say, if the scale of the valuation is lower in one county than in others, as shown by the total assessments of that county, the board must increase or diminish the entire assessment of the county, and has no power to alter the valuation of any particular class of property borne upon the assessment roll of one county, so as to make it uniform with the scale of valuation fixed by the assessor of another county upon the same class of property. This construction of the language of the statute is, in our opinion, erroneous. To follow the rule contended for by appellant's counsel would do a great injustice. For instance, the assessment roll contains property such as real estate, animals, numerous kinds of personal property, and also the capital stock of banks, in counties where there are banks. To contend that the assessment of the entire county must be increased or diminished in order to equalize it with the assessment of other counties in the Territory, would require the raising of the valuation and increase the taxation upon all classes of property enumerated in the assessment roll of the county. Take, for instance, the item of real estate. The difference in the value of real estate in the different counties is very great, and as to it the local board and assessor are better able to place a proper value upon it than the territorial board, because its value depends largely upon local conditions. It would seem unreasonable and, therefore, not within the legislative intent to say, that all the owners of real estate in the county should be compelled to submit to an increase in the valuation fixed upon their real estate, because bank stock or other property was assessed below its proper value. Much more just and reasonable is a construction which would authorize the board to take, for instance, the capital stock of banks, the valuation

of which is approximately the same throughout the Territory, and adjust and equalize the valuation of this particular class of property so as to secure uniformity in its valuation throughout the Territory; and so as to the valuation of other classes of property. Indeed, the language of the section referred to specifically confers power upon this board to raise and lower the valuation of property found upon the assessment rolls, so as to secure uniformity in the scale of valuation throughout the Territory, and it seems to necessarily follow from this language, that the board is required to compare the scale of valuation upon each particular class of property throughout the Territory, and that this raising or lowering does not refer to the raising and lowering of the entire tax roll of the county, because, to increase the valuation of the entire tax roll of all the taxable property assessed in the county, would in many instances, do great injustice to those parties whose property was listed at its full value. The action of the board in this case shows an exercise of the power directly conferred upon them to equalize the assessment of this particular class of property, known as bank stock, as well as all other classes, and to raise or lower the scale of valuation placed upon such property by the assessor in order to perform the duties required of them by law. So far as this case is concerned, all the other questions are eliminated from it except the bank stock; it does not appear that the territorial board of equalization took any action in regard to other property, and it is immaterial whether it did or not. The action taken by the board simply made uniform the scale of valuation upon bank stock throughout the Territory, and in that we are of the opinion that they acted within the scope of their power conferred upon them by law. It is true that in equalizing the assessments of this particular class of property in the different counties of the territory, by increasing or lowering the scale of value placed upon such property by the different assessors, they necessarily changed the value and the assessment of the property of the defendant, but this was only indirectly, and was a necessity to accomplish the purpose for which the board was established. It is reasonable to assume that the intent of the Legislature was to enable this board, in case bank

stock was assessed at fifty per centum of its face value in one county, sixty per centum in another and seventy-five per centum in a third, to equalize the unequal rate of valuation, by fixing a common value upon such property throughout the Territory, without increasing the value of such property as may have been assessed at its proper valuation. The board certified that the scale of valuation upon bank stock in the different counties was not uniform, and they fixed a uniform scale of valuation for the stock of all banks in the Territory. By this means the result of the equalization of this class of property would fall upon the owners of such property, and this is just as it should be. It necessarily affects individual assessments and there could be no equalization of the assessments of property, that would not, in that sense, operate to change individual assessments. But this effect is unavoidable, and as individuals affected by an equalization of values have no just ground of complaint, if the board has such power conferred upon it in the interest of the entire Territory, individual interest must yield to the public good, as it has been found necessary to establish some method of adjusting and equalizing the assessment of property in many, if not all, of the states and territories. It will be observed that the action of the board, in this instance, was not confined in its operation to the assessment of the defendant in this case, but the facts show that all of the banks of the Territory were placed upon an exact equality, and capital stock of each of them was assessed at precisely the same valuation, and in order, no doubt, to avoid injustice in fixing the valuation of the capital stock, of different banks at the full cash value of their capital stock, only sixty percentum of the par value of their capital stock was fixed as a reasonably uniform scale. We are of the opinion that the board acted clearly within the scope of its authority in thus equalizing the scale of valuation upon bank stock, and they had a perfect right to alter the scale of valuation placed upon such stock by the assessor and the board of equalization of Bernalillo county, regardless of the question of appeal.

The statute relating to the assessment of property within the county requires, that where the board of equali-

zation or the assessor increases the valuation of property as returned by the taxpayer that notice of such increase shall be given the taxpayer affected, and the object of this notice is to give the taxpayer an opportunity to object to the altering of the assessment and to appeal if he so desires, but there is no such provision in regard to the action of the territorial board of equalization. This failure to provide for such notice was, no doubt, intentional on the part of the Legislature, because it would be both expensive and burdensome; in fact, it would be practically impossible to notify all individual taxpayers whose assessments might be affected by the territorial board of equalization, in their effort to secure the reasonable uniformity required by law. Indeed, it might happen that almost all the taxpayers of a county or the Territory might be affected by the action of the board of equalization, and it would be unreasonable to require a notice to be served upon all who might be affected by the action of such territorial board of equalization. It is reasonable to believe that the Legislature in fixing a specified date upon which this board should meet, clothed with territorial jurisdiction for the purpose of equalizing the valuations of the property of the Territory, deemed this a sufficient notification to all parties interested to attend the meetings of such board, and there to look after any interests liable to be affected by the action of the board within the scope of its powers, and for that reason made no further provision for notice. This question has been passed upon by the Supreme Court of the United States in a case decided by the Supreme Court of the State of Illinois, known as the State Railroad Tax Cases, 92 U. S. 575. In that case the court said:

MEETING of the board: notice.

"It is charged that the board of equalization increased the estimates of value so reported to the auditor without notice to the companies, and without sufficient evidence that it ought to be done, and it is strenuously urged upon us that, for want of this notice, the whole assessment of the property and levy of taxes is void." * * * "It is hard to believe that such a proposition can be seriously made. If the increased valuation of property by the board without notice is

void as to railroad companies, it must be equally void as to every other owner of property in the state, when the value assessed upon it by the local assessor has been increased by the board of equalization. How much tax would thus be rendered void it is impossible to say. * * * Must each one of these have notice and a separate hearing? If a railroad company is entitled to such notice, surely every individual is equally entitled to it. Yet, if this be so, the expense of giving notice, the delay of hearing each individual, would render the exercise of the main function of this board impossible. The very moment you come to apply to the individual the right claimed by the corporation in this case, its absurdity is apparent. Nor is there any hardship in the matter. The board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of any one before it to assert a right, or redress a wrong; and, in the business of assessing taxes, this is all that can reasonably be asked."

This case was affirmed in McMillen v. Anderson, 95 U. S. 36, in which the court said:

"It seems to be supposed that it is essential to the validity of this tax that the party charged should be present, or had any opportunity to be present, in some tribunal when he was assessed, but this is not, and never has been, considered necessary to the validity of a tax."

The same doctrine was announced and affirmed in the Kentucky Railroad Case, 115 U. S. 321. It would seem, therefore, that such a notice has not been provided for in the laws of some of the states, and the courts hold that the failure to provide for or give the taxpayer a specific notice, does not affect the validity of the tax. The Illinois law is somewhat different from the law of this Territory, wherein it limits the state board of equalization to aggregates; this does not seem to be the case in this Territory, but the omission of a provision for notice of the action of the board of equalization is common to that state and this Territory.

There being no error in the record, the judgment of the court below is affirmed with costs.

Parker, J., and Mills, C. J., concur.

Leland, J., did not participate in the hearing of this case.